The next case today is William Plourde et al. v. Sorin Group USA, Inc. et al. Appeal number 21-1145. Attorney Smith, please introduce yourself for the record and proceed with your argument. May it please the court, I'm David Randolph Smith, counsel for the plaintiffs, appellants William Plourde and Freda Merrill, the parents of Allison Plourde. With Judge Lynch's permission, I'd like to reserve three minutes of time for rebuttal. Yes, you may have it. Thank you, Your Honor. The trial court in this case ruled on a very narrow question of state law in connection with preemption. The court ruled that the plaintiffs had failed to meet their burden to prove that Massachusetts would recognize a duty to report adverse events to the FDA and therefore granted summary judgment on a question of state law without reaching other issues. And this is a very thorny, difficult area of law. Courts have divided on all sorts of issues on preemption, but we respectfully submit that the trial court erred in a number of ways, but basically, and I think this is our strongest point, number one, by misreading and failing to follow the controlling Massachusetts law precedents, and particularly Brown v. Dupuy, which was decided by Judge Susan Garsh in the business litigation section case in 2007, that expressly held that these were traditional common law parallel non-preempted claims, including... I'm sorry, that was a superior court decision? Yes, Your Honor, a superior court decision. Aren't you focused in the wrong place? Don't we have to have an authoritative decision from the state court that at the time of the events which gave rise to this lawsuit, the Massachusetts had recognized such a parallel duty? Excellent question, Judge Lynch, and I was, you sort of pre-terminated my next point. I said the controlling Massachusetts law, and that would be done versus Genzyme, which was decided by the Massachusetts Supreme Judicial Court, and if I may, this doesn't appear in the briefing, this case was not briefed by the parties below because it was in any meaningful way, because the SJC decided that case on January 29th, and then that was a Friday, and the next Friday, Judge Burroughs rendered her opinion, but done versus Genzyme... Now, when did the facts and done arise? Well, the events we're talking about go back to what, 2013? You'll have to fill me in. No, failed in 2014, but plaintiffs filed suit in 2017, I believe, and then the Massachusetts Supreme Judicial Court came down with a done opinion while the summary judgment was still pending, and Adam Combes, who diligently worked for the Rhode Island Superior Court in 2006, on that day, sent the opinion to Judge Burroughs, which said... Counsel, please, could you answer my question? Okay, so your point of view, the parallel duty under Massachusetts law has to be recognized as of 2017 rather than 2014. I'm not clear if that's correct, but let's assume that. Okay, so I asked you, when did the events in the done case arise? Was that done before 2017? Yes, your honor. I believe, factually, it looks like June 8th, 2015 is when Mrs. Dunn had her injections of the Genzyme SyncVisid injection, but respectfully, your honor, I would think, and I could be wrong, you are the Court of Appeals, but if the Massachusetts Supreme Judicial Court comes down with an opinion saying this is Massachusetts law... No, no, I don't think that's good enough. I think they have to say it was Massachusetts law at the time the lawsuit arose, okay? Now, I may well be wrong about that, but I'm sure Congress did not mean to give a blank page to state supreme courts 30 years after an event, 10 years after an event, to recognize a cause of action going forward, but nonetheless, we have to take that as a parallel cause of action created as of the time of these events. Again, I would say, you know, my respectful response would be that Judge Garsh in 2007, and yes, it was a Massachusetts Superior Court case, Justice Garsh... Appeal. Yes, we all have enormous respect for Judge Garsh, but okay, so let's get to your Dunn case and present your argument that that case was sufficient to recognize a parallel state court duty under the common law since it's plainly not statutory to disclose adverse events in addition to the federal law requirement of disclosing adverse events. Yes, Your Honor. Uh, the Dunn case involved an injection into a class 3 medical device. The plaintiff filed suit and had in the claim, they said, we have a negligence claim for failure to warn for failure to follow FDA regulations. They didn't provide a lot of facts, but Judge Gaziano and the SJC said, and I quote, all of the plaintiff's state law claims are properly parallel to the federal requirements, although none of them are sufficiently pleaded. So, Dunn said, you've got a traditional common law parallel claim for failure to warn based upon FDA violations. Five minutes. That's rather a slim read. It kind of sounds like dicta to me. Well, respectfully, Your Honor, the court four times in the case says that turning to Dunn's complaint, we conclude that all of her claims satisfy the preemption standard. The court says, all of these are consistent claims under Massachusetts law that parallel violations of federal law. This is at page 719 of the reports. And then the court says that these are all traditional damages remedy under common law duties. They fit through the narrow gap, which a plaintiff's state law claim must fit through. I think what's interesting is, even though the plaintiff didn't plead any facts at all, the court said, all these claims are parallel. All these are traditional. They all fit through the gap. And I think that's really, as I say in our brief, almost carte blanche. I think that the SJC in the Rafferty case and the Dwyer case is reading the traditional Massachusetts duty of reasonable care under the circumstances to be broad enough to encompass a negligence claim based upon a failure to report adverse events to the FDA. So, and then the other point... How do you distinguish the Arizona Supreme Court case? Yes, Your Honor, thank you. The Conklin case, in our view, went off on a learned intermediary rule and said, well, the learned intermediary rule isn't going to work here in Arizona. That's a duty to warn the physicians, not a duty to warn the FDA. As we point out in the brief, this completely misses Stengel. Stengel was 11 judges, seven of whom, which would be a majority, signed on to Judge Watford's opinion that said, wait a minute, this isn't a learned intermediary issue. I'm sorry, I perhaps was not precise enough. The district court judge here invokes the learned intermediary rule and says, under Massachusetts common law, understanding of the learned intermediary rule, there was no obligation here. Okay. Does the Dunn case go to that issue? No, Your Honor, the Dunn case does not discuss the learned intermediary rule. And I think my case says, and H.P. Hood says, that the duty issue is more general, reasonable care under the circumstances, broad enough to encompass the failure to report claim. And as we say in our brief, the Conklin case is wrong because it did not read Stengel correctly, because that's essentially what it was disagreeing with. And so this is the distinction. Stengel is the federal court attempt to predict what the Arizona court would do. The Arizona court then says, no, you got it wrong. So I don't know that that helps a lot. Well, and that brings us to our point about, okay, if the law is uncertain and undecided, I don't believe that means that the defendant wins. What do we do about the language that it is your burden to show the existence of such a parallel claim applied to learned intermediaries? Well, I think that they met their burden by presenting the Dunn case and by presenting the Judge Garsh's opinion, which decided the question. Because in Garsh, the exact issue was that the expert said that there was a failure to report adverse events to the FDA. So the failure to report FDA adverse events post-approval was on the table in Garsh and held to be a parallel claim. So that's the law. I agree with you. You don't get many cases like this at all because they're all preempted. So we had a very paucity of state law. But what there was favored the plaintiffs, and they walked into court and said, here's Judge Garsh, here's Judge Gaziano, we should win. And I think if that's not the case. Except we've just said Dunn has nothing to do with the learned intermediary rule. Did Judge Garsh's ruling apply to the learned intermediary rule? No, Your Honor, Judge Garsh did not discuss the learned intermediary. That's what I thought. Okay. Could you be clear what you're referring to when you refer to the learned intermediary rule? I may have forgotten my first year of torts, but I thought it was almost more in the nature of a defense than a claim. I thought there's a duty to warn. You're right. And a defendant can say, even though I didn't tell the plaintiff, I told the plaintiff's learned intermediary and that's enough. That's correct, Your Honor. Basically, it's an exception to the duty to warn that you can satisfy the duty of by warning a learned intermediary. The duty you're talking about here is the old duty of the duty to warn if you're selling a product and it's got a problem with it, you have a duty under some circumstances to warn. Correct. You've got a case here in which they didn't warn your client. Correct. They didn't warn your client's learned intermediary, the doctor. And so you want to say they've warned no one? Well, the plaintiff's theory was essentially the Stengel theory, which is there is the duty to the patient to warn and the duty of reasonable care under the circumstances. And that the majority opinion, Stengel said, under the learned intermediary rule, in effect, you can satisfy the duty by warning the FDA or by giving adverse reports to the FDA, and that will support a parallel state law claim. That was the majority judge, the 11 judges. But seven judges said, no, no, it's not the learned intermediary rule. It's good old fashioned general negligence, duty of reasonable care under the circumstances. And the way we read Massachusetts law, that's what Massachusetts law is. And the Dwyer case specifically says that even if you didn't have the federal requirements, you would have a duty of reasonable care under H.P. Hood to warn. Mr. Smith, you're not making an argument, surely, that the defendants did not raise the learned intermediary rule, because they obviously did. The district court opinion heavily relies on it. Yes, absolutely. The defendants argued that the duty was limited to the duty to warn the physician under the learned intermediary rule. And our position is that under Massachusetts law, the duty is a little bit broader. It's a duty of reasonable care under the circumstances. And that extends to a duty to report adverse events, which was recognized in Coleman, the Medtronic case in California. And then the question is, what would Massachusetts do? Would Massachusetts follow Conklin? Would Massachusetts follow Coleman or Stengel? And that's why Glover, the Second Circuit, punted this to the Connecticut Supreme Court. Now you've confused me again. I still, I don't understand what the learned intermediary rule has to do with this case, because the defendant is not claiming they told your client's doctors. I think that the defendant, Your Honor, if I may, is claiming that our only duty is to warn the doctors via the FDA warning. That's what they're saying. All we have to do... But they don't claim that they disclosed to the FDA. Isn't the problem here that they did not report these adverse events to the FDA? That's correct, Your Honor. After approval, between 2007 and 2014, we maintain and the record shows that they did not submit adverse event reports for malfunction, et cetera. Now the question is, is the failure to do that a claim under Massachusetts law? If I may just pursue this a little further, didn't they make reports and didn't the FDA approve the defendant's internal systems for when they had an obligation to make such disclosures? So are you saying that there is a state law duty that is broader than the FDA's acceptance of a system which they have approved as to when adverse reports have to be made? Yes, I am. Yes, the FDA did look at Soren's reporting system, but our position is, supported by experts, that they did not comply with their reporting obligations under Section 830, 21 CFR Section 830, to report malfunctions and serious injury or death, and there were 22 reports that they did not report, and that was a violation of FDA law. So there was violation. They didn't report these adverse events. Had they done so, the doctor would have realized that these things were dying like flies or only lasting 18 months, and you wouldn't have used it. So yes, the FDA, in general, gave the imprimatur to their reporting system, but the FDA never said, you are or are not in violation of your reporting. Let me hypothetically, if the FDA said, no, there's been no reporting obligation, you would maintain, nonetheless, you have a lawsuit because, in your view, Massachusetts law goes further than whatever the FDA requires? Yes, Your Honor. I think the analysis is that, separate and apart from the FDA, without respect to the FDA, there is a claim under Massachusetts law for the failure to act as a reasonably prudent manufacturer would under the circumstances. At that point, don't you have an inconsistency of obligations problem? I don't think so, Your Honor, because I think the Dwyer case said, and that was a manufacturing case, even if there weren't any CGMPs, current good manufacturing practices violations, there'd still be liability under Massachusetts law because you didn't act as a reasonably prudent consumer. Got it. Thank you. I have one more question. At the outset, you said that it's your contention that Massachusetts law would recognize your theory. The other side argues that it recognizes, I think, the wrong test. They would argue that the test did recognize prior to the enactment of the MDA in 1984. I'm not sure exactly what your response was to that argument. Thank you, Your Honor. No, I believe that at the time of this event, Massachusetts law did recognize a parallel claim on the basis of Judge Garsha's opinion, and that was law in Massachusetts. I'm sorry, there are two different questions here. There is an argument made that the relevant date is 1984. I believe that's the date of the Medical Devices Act amendment. Your answer did not go to that. It went to, well, as of the time of the events in this case, such a duty existed. Yes. Which is the relevant time? I would say that as of the time of the date of implantation, but I would also argue that in 1984, Massachusetts had negligence law and recognized the general duty of reasonable care of the manufacturer under the circumstances. That's been the law in Massachusetts. Good old-fashioned general traditional negligence is really what the majority said in Stengel. The Knights has this crazy rule. That's very helpful. Thank you. Thank you. Attorney Smith, please mute your audio and video. Attorney Koski, please unmute your audio and video. Introduce yourself for the record and proceed with your argument. Good morning. My name is Katie Koski of Foley and Lardner LLP, and I represent the appellees Soren Group USA, Inc., Soren Group Canada, Inc., and Carbomedics, Inc. May I proceed? Yes. I think the discussion with Mr. Smith highlights the issue that Soren has raised as the appellee, and that is that the issue for the court to decide in which the district court focused on is not whether a general negligence claim exists under the law of the Commonwealth. I think we can all agree that it does, and in fact, we can all likely agree that it exists under the law of the 50 states. What Riegel and Bachman, under the auspices of the MDA express preemption provision require, is for the plaintiff to establish that there is a parallel conduct or requirement imposed by the Commonwealth that parallels the federal requirement that is alleged to have been violated. And Bachman specifically says that that parallel conduct had to, quote, predate the federal enactments in question. So that would hearken back to the 1984 adoption of the medical device amendments to the Food, Drug, and Cosmetic Act. Specifically, Judge Burroughs in the district court looked at the allegations of the plaintiff's complaint and determined that both claims that we have before the court now, the negligence claim and the separate failure to warn claim, are both based on the same conduct. And the alleged conduct there is the failure to report adverse events to the FDA, whether it's couched as a failure to report or a failure to warn as the appellant does in its papers, the conduct itself is the same. Judge Burroughs challenged the plaintiff to identify Massachusetts law that would, that where that pre-existing obligation exists and found that there is no such Massachusetts law and granted summary judgment on preemption grounds. Now, as I understand the discussion prior, the court are now asserting that the negligence to report adverse events to the FDA is broader than what the FDA itself calls for in the federal regulations. That falls squarely within the express preemption provision of the NDA, as it clearly would impose obligations on Soren and other device manufacturers that are different from or in addition to the obligation required under the NDA. Therefore, any, any, uh, that, that would be expressly preempted. The second question is whether looking at the specific requirement under Massachusetts law, this reporting requirement was called for even within the context or within the same bounds of the FDA reporting requirements. That's where we have to be in order to avoid express preemption, as I think the district court advised. Oh, Judge Kayada, I believe you're on mute, sir. Suppose we, thank you. Suppose we had a Massachusetts SJC opinion that said that in 1984, a person could be held liable in Massachusetts for failing to act reasonably in connection with the sale of a medical device and that the unreasonable conduct could be failing to report it to the patient, the doctor, or the FDA. If there were a Massachusetts case saying that, would that suffice under Buchman? Um, that claim would be preempted by the adoption of the NDA because that would require the reporting of additional information beyond the scope of what the FDA imposes on a manufacturer. No, just in other words, it was, let me be more precise. It was, you, you acted unreasonably by not telling the FDA something you were supposed to tell the FDA. And the, the, the claim, the negligence claim says that the failure to provide this information under the adverse event reporting requirements to the FDA is the basis of the negligence claim because, and this goes to the causation element of the plaintiff's negligence claim, because that information would be transmitted from the FDA to the learned intermediary, to the doctor. You're jumping ahead to a separate issue and I know you have a causation event, but I'm still trying to understand the basic Buchman issue. If Massachusetts laws of 1984 said, would allow a verdict for a plaintiff who contended that the medical device manufacturer acted unreasonably by failing to tell the FDA something that it was obligated to tell the FDA, then would that get us around the preemption issue? In which case we need to turn our attention to causation. So if I understand your Honor's question, it's whether, if there existed a law in Massachusetts for the medical device amendments. No, that wasn't what I said. I said, if we had an opinion issued today from the SJC saying that Massachusetts law has long been such that it would entertain and accept a decision of the medical device manufacturer acted unreasonably by not telling the FDA something it was obligated to tell the FDA. I think there would be an express preemption problem, Your Honor. And the reason would be that the reporting of an adverse event to the FDA is governed by the language of the FDA regulation. As I understand Your Honor, your hypothetical includes that standard. And as in particular with respect to class three medical devices, which the heart valve that issued here is, there's very strict regulations from the FDA about what language can be used in warnings, in risks, in indications. And likewise, the standard for what constitutes an adverse event is something that is reviewed by a panel of experts at the FDA who are considering things like the medical- You're going to the merits of whether there should have been a disclosure. I don't think you're answering my question. So let me try to ask it a different way. Can you give us an example of any claim in any state of any type, hypothetical, imagined here, whatever, that would survive your definition of Buckman preemption? Sure. We presented in the brief the example of the manufacturing defect versus a design defect. And the example there is both would exist under common law negligence principles in the Commonwealth or in any of the 50 states, I imagine. The design defect claim is something that's specifically word for word approved by the FDA. You have to design the product in such a way. The manufacturing defect claim is it could be a slightly different claim because I think we can agree that prior to the medical device amendments, states were in the business of regulating, at least through common law in Massachusetts, how our product was designed and manufactured and put to market. So if you had a product that had a specific approved design, you wouldn't challenge the design, that would be preempted. But if a specific unit of the product was manufactured outside the scope of that design that's approved by the FDA, in my head, I think of something like a jar of fruit that had glass in it. Clearly, that product is not intended to have glass in it. And clearly, the glass would be a manufacturing defect respect to that particular product. You could hearken back to common law negligence principles in Massachusetts to say that is a parallel claim to the extent that it was manufactured outside of the approved design, that particular unit was manufactured. So hypothetically, if those types of facts present to themselves. Now, the narrow gap language of Regal and the express preemption language in the statute are intended to create a narrow gap, are intended to create a small universe of cases that could survive preemption. And I do think that's a in particular, the class three devices and the rigor with which those devices are brought to market, including that the language included in the labeling is vetted to the letter by the FDA before it's allowed to be included with the packaging. Are there further questions from the panel? I did want to, if I could focus on the Dumont decision from this court in 2019, which was actually a decision under the FDCA relating to hazelnut coffee. So it's under the food portion of the food drug and cosmetic rather than the much more rigorous process for approval of a class three medical device. Five minutes. And in particular in Dumont, this court focused on the fact that the complaint has to focus on it is the conduct that is pled that has to both violate the federal standard under the FDCA, as well as the state law claim. And so again, we go back to the point that it's not that a broad common law negligence claim can be a parallel claim. It has to be the specific conduct. And there in Dumont, this court, although it held for other reasons that the claim could proceed, it did say that to the extent that the claim was premised on the violation of federal law, which is what the appellant asserts here, that it would be dismissed as preempted. One other point to make about the case law across the country, and then I wanted to address the Dunn case, but across the country, the vast majority of the cases who've dealt with this issue have dealt with it at the pleading stage. And as judge Burroughs did here in the district court, judge Burroughs, as I think the plaintiff said, threw down the gauntlet to identify Commonwealth of Massachusetts law that would have a parallel claim. That is what the vast majority of courts who have decided the claims can proceed do. There are, to our knowledge, only two cases decided after a full summary judgment record where this issue was decided. And that's the Kubicki case from the district of the District of Columbia, and then our own case below, where after a full record, it was determined that there was no parallel claim that could survive preemption. And I think that's important because even in the Brown case, which Mr. Smith cited, the superior court case, the court there said, you may have a claim. You may have a parallel claim. And most of those cases, or many, I shouldn't say most, but most of those cases have language to the extent that you can establish a parallel claim, or the state law may provide for a claim. And those cases, the vast majority of them either have not yet proceeded to the stage that this case had or settled or may still be pending. But the truth of the matter is that the courts have not uniformly, and certainly not in any majority way, decided that state law claims would parallel the federal requirement. Lastly, with respect to Dunn v. Genzyme, that decision, which did come out a week before a summary judgment order was issued, is based on almost no allegations of fact. There is no clear allegation of which specific conduct the defendant there is alleged to have engaged in, which would be parallel conduct to a regulation established by the FDA. I agree that the language about these claims pass through the narrow gap respectfully. I think this court is the court to decide whether or not federal preemption standard is applied. The SJC is to determine whether a particular conduct is required or prohibited under Massachusetts law. And the court really didn't reach that issue. There was no conduct plead. And in fact, the court sustained the dismissal of the claims because there was insufficient pleading. And so I, you know, would disagree with Mr. Smith that that, regardless of the timing of Dunn v. Genzyme, that anything about Dunn v. Genzyme establishes that the Commonwealth recognizes a duty to report adverse events to the FDA is just plainly outside Dunn v. Genzyme. And the last point, which Judge Kayada referred to, that we plead is that the summary judgment can be affirmed on the alternative ground of the other elements of the negligence cause of action. So breach and causation. I'll focus in my limited time on causation in that even in Stengel, the case that the plaintiffs rely on, the causation hurdle is a high one. In other words, according to Stengel, in order to prevail, Plord would have to prove that if Soren had properly reported the adverse events to the FDA as required under federal law, that information would have reached Ms. Plord's doctors in time to prevent her injuries. As the district court found below, the undisputed fact is that there's no evidence that the doctor who performed her surgery was aware of the adverse event reporting database, regularly checked and searched it for adverse events, or otherwise was unaware of the very risk that that issue, which the doctor was familiar with from the labeling that comes with the device. So for that separate reason, the court could affirm summary judgment as it's entitled to do. Counsel, that's time. The failure to prove causation. Okay. Any further questions? No. Thank you. We'll hear rebuttal. Thank you. Attorney Koski, please mute your audio and video. Attorney Smith, please unmute your audio and video and proceed with your three minutes of rebuttal. Yes. Thank you, Your Honor. I'd like to respond to Judge Kayada's question about Buckman. And again, cite Judge Garsh, who said, and I'm quoting from page 12 of the opinion, there is no merit to Dupuy's argument that Buckman forecloses a claim predicated upon a failure to disclose material information to the FDA in violation of FDA regulations. A state claim alleging negligence based on failing to disclose known risk to the FDA and therefore to patients is not impliedly preempted because liability does not exist solely by proof of a violation of FDA disclosure requirements. And by the way, in that Dumont peanut butter case, that's exactly what this court said. There is no Buckman preemption if you are suing for an FDA violation, but not solely because of it. And so I don't think that the court needs to reach Buckman. The district court basically went with Stengel and Hughes and Bosch and said there is no preemption of a negligence claim or failure to warn claim based on failure to report adverse events. So as I said, I don't think this court needs to put its toe in the water about Buckman, but if the court does, it should follow Judge Garsh and Judge Burroughs, who both did not find Buckman preemption for this claim. Secondly, I would strongly disagree that the Brown case said may have had a claim. That's not correct. The Brown case said there is a traditional common law parallel claim for failing to report adverse events to the FDA. What the court did not decide and left on the table was Buckman. That was the issue that was not decided, but there is a finding it would defy logic for there not to be liability. The court says we agree with the reasoning in In re Medtronic defibrillators, the district of Minnesota case. So I mean the court can read the Brown case as well as we can, but Judge Garsh did say you've got your common law claim. The question that I'm deciding is, is it preempted? And then finally, the issue of the learned intermediary rule here, because there was no reporting, the only one who knew that these valves were failing precipitously was the manufacturer. So the doctor and the FDA didn't have the information. So that's really why in the Scoggins case, the court said maybe the So your honor, I would just rest our case on the holdings and controlling decisions in Dunn and Brown. We respectfully believe that the Stengel majority, 11 judges on the Ninth Circuit, all agreed that this was not a preempted claim. And if there's any uncertainty, we would ask that it be certified to the Massachusetts Supreme Judicial Court, consistent with what the Second Circuit did in Glover. And as to the- Counsel, that's time. Okay. Thank you. Thank you both. Appreciate the arguments. Thank you, Judge. That was our last case. That concludes arguments for today. This session of the Honorable United States Court of Appeal is now recessed until the next session of court. God save the United States of America and this honorable court. Counsel, please disconnect from the meeting.